# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| APRIL DAWN DENNIS, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 16-6561 |
| NANCY A. BERRYHILL,[1] | : | |
| Acting Commissioner of Social Security, | : | |
|     Defendant. | : | |

## MEMORANDUM AND OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                  June 6, 2018

April Dawn Dennis, ("Plaintiff") filed this action to review the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385 ("the Act"). This matter is before me for disposition, upon consent of the parties.[2] For the reasons that follow, Plaintiff's request for review will be **GRANTED**, and the matter remanded for proceedings consistent with this Memorandum and Opinion.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Berryhill should be substituted for the former Acting Commissioner, Carolyn Colvin, as the defendant in this action.

[2] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. (Consent and Order, ECF Nos. 14 and 15).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on December 21, 2012, and SSI on January 14, 2013. (R. 92-93, 623-28). She alleged disability as of April 15, 2012, due in relevant part to degenerative disc disease, leg weakness, and bi-polar disorder. (R. 21, 51, 62, 78, 92, 111, 623, 634). The Social Security Administration denied her claim for benefits at the initial level of review. (R. 78-86, 629-33). Following the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on October 10, 2014. (R. 639-76). Plaintiff, represented by an attorney, appeared and testified. (R. 646-61). Plaintiff's granddaughter and an impartial vocational expert ("VE") also testified at hearing. (R. 661-73). On April 21, 2015, the ALJ issued a decision denying benefits under the Act. (R. 21-32). The Appeals Council denied Plaintiff's request for review, (R. 10-16), making the ALJ's decision the final decision of the Commissioner. Plaintiff commenced this action on December 21, 2016, and subsequently filed a Brief and Statement of Issues in Support of Request for Review. (ECF Nos. 1 and 13). Defendant filed a response. (ECF No. 18).

## II. LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c (a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her]

> physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work. If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520, 416.920. The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III. FACTUAL BACKGROUND[3]

The Court has reviewed the administrative record in its entirety, and summarizes here the evidence relevant to the instant request for review.

Plaintiff was fifty-two years old on her alleged disability onset date. (R. 51). Plaintiff completed ninth grade.[4] (R. 649). She previously worked as a cashier, an envelope stuffer, and a laundry sorter. (R. 112, 118-21). At the time of the administrative hearing, Plaintiff lived with her fifteen year old granddaughter and five year old grandson. (R. 647-48).

### A. Medical Evidence

#### 1. Physical Impairments

The record reflects a history of Plaintiff experiencing low back pain with radicular symptoms and weakness in her legs.[5] (R. 27). An August 28, 2009, MRI of Plaintiff's lumbar spine showed "degenerative disc disease and facet arthropathy superimposed on a moderately congenitally narrow spinal canal, resulting in severe central canal stenosis at L3-L4 and moderate central canal stenosis at L4-L5." (R. 251-52). A subsequent MRI of her lumbar spine on May 26, 2012, showed "mild worsening of a diffuse disc bulge at L5-S1," "mild to moderate congenital spinal canal narrowing," and "moderate to severe and moderate central canal stenosis at levels L3-L4 and L4-L5, respectively." (R. 156-57).

---

[3] Plaintiff's request for review challenges the ALJ's consideration of her back impairments and bipolar disorder. Accordingly, the Court's recitation of the evidence focuses on those impairments.

[4] Plaintiff's disability report indicated that she completed high school, (R. 112); however, at the administrative hearing, Plaintiff testified that she only completed ninth grade. (R. 649).

[5] The record also documents Plaintiff's treatment for other conditions, including gallstones, asthma, and arthritis. However, Plaintiff only challenges consideration of her back pain and bipolar disorder, and thus, her other physical impairments will not be discussed further.

Between 2009 and 2014, Plaintiff treated at Physical Therapy Physicians, P.C. with Dr. James F. Bonner, M.D., and physicians' assistant Joan Formiglia, PA-C.[6] (R. 217-52, 466, 575-620). Plaintiff complained of pain in her lower back associated with spinal stenosis and degenerative changes in her lumbar spine. (R. 219-39). On physical examination, Plaintiff displayed an antalgic gait[7], difficulty with postural changes, positive straight leg raises[8], and palpable pain in her low back. (R. 219-30). Notes reflected that Plaintiff "ambulates with a straight cane." (R. 220, 223-25, 229-31). She received monthly outpatient evaluations, and management of her pain medication. Although medication prescribed on a monthly basis made Plaintiff's pain "more tolerable," (R. 219), epidural injections were recommended to alleviate Plaintiff's pain. (R. 219, 220, 223, 224-30, 233, 234). On November 11, 2013, Dr. Bonner noted that Plaintiff's condition precludes "any type of employment due to her chronic pain syndrome." (R. 219).

On September 14, 2014, Dr. Bonner completed a Medical Source Statement related to Plaintiff's physical ability to perform work. (R. 193-94). Dr. Bonner opined that Plaintiff was able to: (1) sit for 2-4 hours and stand/walk for 1 hour in an 8-hour workday with the option to sit/stand every 15 minutes; (2) frequently lift/carry less than 10 pounds and occasionally lift/carry 10 pounds; (3) rarely push and/or pull with her lower extremity and occasionally push and/or pull with her upper extremity; (4) rarely climb ramps/ladder/robe/scaffold, and balance;

---

[6] Plaintiff's records from Physical Therapy Physicians, P.C. reflect signatures of Dr. Bonner and/or nurse practitioner Formiglia. For ease of reference in this Report and Recommendation, the records will be discussed as attributable to Dr. Bonner.

[7] An antalgic gait is one assumed to lessen pain. *Granger v. Astrue*, No. 11-3928, 2012 WL 1392567, at *2 n.8 (E.D. Pa. March 20, 2012) (citing *Dorland's Illustrated Medical Dictionary* 600 (31st ed.2007) at 98).

[8] A straight leg raise is used to detect sciatica, a condition in which protrusions in the lower spine result in pain that radiates from the lower back to the leg. *See Granger*, 2012 WL 1392567, at *2 n.9 (citing *Dorland's* at 1703, 1737).

(5) occasionally climb stairs, and bend/stoop; and (6) never kneel or crouch. (Id.). According to Dr. Bonner, Plaintiff required 10 minute walking breaks every 15 minutes, and 15 minute sitting breaks every 5 minutes in an 8-hour workday. (R. 194). Dr. Bonner also indicated that Plaintiff was medically required to use a cane for ambulation. (R. 193). Dr. Bonner based his opinion on, *inter alia*, his clinical observations of Plaintiff's antalgic gait, difficulty walking, positive straight leg raise testing, and guarding, as well as Plaintiff's need for daily pain medication. (R. 194). In a clinical note dated October 13, 2014, Dr. Bonner reiterated that Plaintiff is "unable to perform any gainful employment" due to "severe back pain requiring opioid medication." (R. 575).

Plaintiff also treated with internal medicine specialist, Dr. Christopher Hannum, between 2011 and 2014. (R. 201-10). Although difficult to read, Dr. Hannum's notes reflected treatment for a variety of ailments. (R. 201-04). On August 6, 2013, Dr. Hannum noted Plaintiff's lower back problems secondary to "disc disease." (R. 202). On January 25, 2014, Dr. Hannum completed a form for the Department of Public Welfare by checking a box that indicated Plaintiff was "permanently disabled." (R. 463).

### 2. Mental Impairments

On January 29, 2013, Plaintiff presented to Crozer Community Hospital for a psychiatric evaluation. (R. 167-76). She reported feeling depressed and stressed due to medical issues and issues with her grandchildren. (R. 167, 171). Upon mental status examination, Plaintiff appeared healthy, well-groomed and cooperative. (R. 175). She displayed slow and monotonous speech; depressed mood; constricted affect; organized and goal-directed thought processes; memory, concentration, and intelligence within normal limits; and fair judgment and insight. (*Id.*). Plaintiff received a diagnosis of major depressive disorder. (R. 176).

On September 14, 2014, psychiatrist Dr. Neil Stoler, M.D. completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R. 195-99). Dr. Stoler noted that "Pt is new to me. Reports based on pt. reports, records, and some observations." (R. 195). According to Dr. Stoler, Plaintiff displayed "low concentration" and "poor compliance with appointments." (R. 196). He opined that Plaintiff was restricted in her ability to understand, remember and carry out simple and detailed instructions; make judgments on simple work-related decisions; interact appropriately with supervisors, co-workers, and the public; and respond appropriately to work pressures and changes. (R. 195-96).

### B. Lay Evidence

At the administrative hearing, Plaintiff testified that she last worked in 2012 as an envelope stuffer. (R. 650). She testified that she is unable to work due to "horrible" back pain and "suicidal" thoughts. (R. 651, 655). She explained that her pain management specialist prescribes Oxycodone and Flexeril, which make her drowsy, but "soothe [her] pain for a length of time." (R. 652-54, 657, 660). She described using a cane to stand and walk. (R. 657, 659). With regard to her mental impairments, Plaintiff testified that she attends monthly mental health treatment with a psychiatrist, and that she was previously admitted for inpatient psychiatric treatment.[9] (R. 654, 659). According to Plaintiff, her fifteen year old granddaughter was responsible for cooking, cleaning, grocery shopping, and caring for her five year old brother as well as Plaintiff. (R. 654). Plaintiff testified that she could not perform her job as an envelope stuffer without the assistance of her granddaughter. (R. 656).

Plaintiff's granddaughter also testified at the hearing. (R. 661-67). She confirmed she and her five year old brother live with Plaintiff, their grandmother. (R. 663). She testified that Plaintiff "does nothing" and lies in bed "all day," (R. 665), while she does all the household

---

[9] The record does not include records from an inpatient psychiatric hospitalization.

chores and cares for her little brother. (R. 665-66). She further reported that she attends a cyber school, and performs the household tasks in addition to her school work. (R. 663-64, 666-67). According to Plaintiff's granddaughter, she provided assistance to Plaintiff stuffing envelopes; however, her recollection differed from Plaintiff's with regard to the timing of the performed work. (R. 664).

## IV. ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not disabled. (R. 21-32).

1. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity after her alleged onset of disability. (R. 23).

2. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: a back disorder and a mood/affective disorder. (R. 24).

3. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. (R. 25-26).

4. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work except that Plaintiff is limited to simple, repetitive tasks with only occasional changes in the work setting and occasional contact with the public and coworkers. (R. 26).

5. At step four, the ALJ found Plaintiff capable of performing her past relevant work as a laundry sorter and envelope stuffer. (R. 32).

Accordingly, the ALJ found Plaintiff was not disabled. (R. 32).

## V. DISCUSSION

In her request for review, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly discounted the opinions of treating medical

providers Dr. James Bonner, M.D., Dr. Christopher Hannum, M.D., and Dr. Neil Stoler, Ph.D. The Commissioner counters that the ALJ properly analyzed the medical opinion evidence, and that substantial evidence supports the ALJ's decision. Having reviewed the parties' submissions, the record including the medical evidence and the hearing testimony, and the ALJ's decision, this Court concludes that remand is not warranted based on the ALJ's consideration of Dr. Stoler's opinion regarding Plaintiff's mental limitations. However, I find that the ALJ failed to adequately explain her rejection of all physical limitations found by Plaintiff's treating physicians. Accordingly, Plaintiff's request for review on this basis is granted.[10]

The ALJ has a duty to evaluate all relevant evidence in the record. *Burnett,* 220 F.3d at 121. To facilitate meaningful judicial review, the ALJ must explain clearly and fully the basis of her decision. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ must discuss what evidence supports her determination, what evidence she rejected, and her reasons for accepting some evidence while rejecting other evidence. *Diaz v. Comm'r of Soc. Sec.,* 577 F.3d 500, 505–06 (3d Cir.2009); *Cotter,* 642 F.2d at 705–06. Otherwise, the reviewing court cannot determine whether significant probative evidence was improperly rejected or ignored. *Burnett,* 220 F.3d at 121; *Cotter,* 642 F.2d at 706–07.

Opinions from treating sources are generally given more weight than opinions from other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[11]; *see, e.g.*, *Fargnoli v. Massanari*, 247

---

[10] The Court acknowledges that Plaintiff raises other allegations of error. However, because remand is ordered on other bases, I need not address Plaintiff's other arguments. It is possible that, on remand, the ALJ may reach different conclusions as to the weight to be afforded to the treating source opinions, resulting in an entirely new RFC, step four analysis, and hypothetical to the VE.

[11] The Social Security Administration amended the regulations governing the treatment of medical evidence, stating that the rules in these sections apply only to claims filed before March 27, 2017. Plaintiff's claim was filed prior to March 27, 2017, so the pre-amendment regulations apply here.

F.3d 34, 43 (3d Cir. 2001) (so long as a treating source's opinion is "well-supported" and "not inconsistent with the other substantial evidence," it is given "controlling weight."). The Third Circuit has explained that treating physician opinions require this level of deference because they "reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); *see also Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).

The ALJ may give more or less weight to a treating physician's opinion based on: (1) the length of the treatment relationship and frequency of examination; (2) nature and extent of examination; (3) the supporting explanations provided for the opinion; (4) the consistency of the opinion with the records as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). In rejecting or giving less weight to a treating physician's opinion, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Social Security Regulations recognize that treating physicians have a unique perspective that "cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

### A. Physical Impairments - Opinions of Dr. Bonner and Dr. Hannum

Plaintiff first argues that the ALJ rejected the opinion of treating physician, Dr. Bonner, "based on legally insufficient and/or factually inaccurate reasons." (Pl.'s Br. 6, 9-10, 13-18). I

10

agree. Plaintiff treated with Dr. Bonner for nearly five years.[12] Based on his treatment of Plaintiff, Dr. Bonner concluded in his Medical Source Statement ("MSS") that Plaintiff had physical work-limiting restrictions caused by "severe lumbar spinal stenosis" and "chronic pain syndrome." (R. 193). The ALJ afforded "little weight" to the opinion of Dr. Bonner, and consequently included no physical limitations in the RFC.

The ALJ's evaluation of treating physician Dr. Bonner's September 2014 MSS is not supported by substantial evidence. First, the ALJ incorrectly stated that Dr. Bonner's conclusions "are inconsistent with the physical examination findings or objective testing." (R. 29). Treatment records from Physical Therapy Physicians, P.C., repeatedly documented physical examination findings that documented Plaintiff's antalgic gait, difficulty with positional changes, palpable pain, positive straight leg raises, and pain on extension. (R. 219-22, 225, 228-37, 586, 601, 603, 605). At many of Plaintiff's visits, she used a straight cane for ambulation, (*id*.), which Dr. Bonner concluded was "medically required." (R. 193). Moreover, objective testing of Plaintiff's lumbar spine over a three year period confirmed worsening degenerative disc disease, mild to moderate congenital spinal canal narrowing, and moderate to severe canal stenosis. (R. 156-57, 251-52).

The ALJ also mischaracterized the record evidence related to the efficacy of Plaintiff's medication. According to the ALJ, "Dr. Bonner has stated that pain medication relieved

---

[12] For approximately a one year period, Plaintiff sought treatment with a different provider, Dr. Pierce. (R. 591-92). She returned to Dr. Bonner in August of 2013. (*Id.*). The ALJ concluded that Plaintiff "switched from doctor to doctor for purposes of possible 'drug seeking.'" (R. 30). However, the ALJ failed to point to record evidence in support of this conclusion, and thus, this conclusion appears to be improperly based solely on the ALJ's own lay conclusion. *See Morales*, 225 F.3d at 318 (ALJ cannot disregard medical opinion based solely on "amorphous impressions, gleaned from the record"). While the Commissioner puts forth convincing arguments in her brief to shore up the ALJ's decision on this point, (Resp. 11-13), "'[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization." *Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012).

[Plaintiff's] symptoms." (R.29). The ALJ's statement is not entirely accurate. In July of 2011, Dr. Bonner indicated that he prescribed "pain medication that helps take the edge off," (R. 231), and "relieve [Plaintiff's] severe symptoms." (R. 224). However, Dr. Bonner increased Plaintiff's pain medication, and ultimately, recommended epidural injections to help with Plaintiff's worsening pain. (R. 224, 228-29). Dr. Bonner noted that Plaintiff "has severe lumbar stenosis and chronic pain in her back . . . [w]e had her on pain medication, which helps the severe symptoms. She has been unable to perform gainful employment because of it." (R. 584). He scheduled her for electrodiagnostic studies, (*id.*), which reflected "abnormalities . . . consistent with right L5 radiculopathy with chronic/active features" with no peripheral entrapment. (R. 581).

Finally, the ALJ discounted Dr. Bonner's opinion because "[it] appears to be based heavily on [Plaintiff's] subjective complaints, rather than the objective medical evidence." (R. 30). However, Dr. Bonner based his opinion on his personal observation of Plaintiff over a number of years. As discussed above, Dr. Bonner consistently documented Plaintiff's antalgic gait, difficulty walking and changing positions, decreased range of motion, and positive straight leg raising tests. Dr. Bonner specifically identified his first-hand clinical observations – along with objective findings and symptomology – as the bases for the opinions contained in his September 2014 MSS on his observations, along with objective findings and prescribed treatment. (R. 194).

Plaintiff also argues that the ALJ improperly rejected the opinion of treating physician, Dr. Hannum. (Pl.'s Br. 18-19). Dr. Hannum treated Plaintiff sporadically for three years. On January 25, 2014, he completed a Department of Public Welfare form by checking a box indicating that Plaintiff was "permanently disabled." (R. 463). The ALJ gave "no weight" to the

January 25, 2014 form because it did not contain a "function-by-function assessment of the claimant's limitations." (R. 29). This sparse statement failed to account for Dr. Hannum's treating relationship with Plaintiff, and does not provide sufficient discussion to allow meaningful judicial review. *See Fargnoli*, 247 F.3d at 42 (citations omitted). While there may be good reason for the ALJ to discount Dr. Hannum's opinion, neither the Commissioner nor this Court can provide them after the fact. *Nichols v. Colvin*, No. 14-01755, 2015 WL 5255245, at *4 (W.D. Pa. Sept. 9, 2015) ("Although there may be grounds . . . to support the ALJ's conclusions, it is not [the Court's] role to seek out such grounds and justify the ALJ's decision post-hoc. Although this approach may appear to elevate form over substance, the requirement that an ALJ adequately explain his decision is not a technicality."). Remand is therefore also ordered for the ALJ to provide further discussion of the weight afforded to Dr. Hannum's opinion.

Consequently, I find that the ALJ erred in the weight afforded to the physical medical opinion evidence, and order remand on this basis.

### B. Mental Impairments - Opinion of Dr. Stoler

Plaintiff contends that the ALJ rejected the opinion of treating psychiatrist, Dr. Stoler, "without discussion of the evidence that supported it." (Pl.'s Br. 20). I disagree.

Dr. Stoler completed a September 14, 2104, Medical Source Statement ("MSS") of Plaintiff's mental ability to perform work-related activities. (R. 195-97). In the MSS, Dr. Stoler noted that "Pt. is new to me," and therefore, his opinion was based on "pt reports, records, and some observation."[13] (R. 195). Dr. Stoler identified: "extreme" limitations in Plaintiff's ability to understand and remember detailed instructions; "marked" limitations in her ability to carry out

---

[13] Although the Commissioner did not raise the issue, it is not clear Dr. Stoler would qualify as a "treating source" based on his limited relationship with Plaintiff. *See* 20 C.F.R. § 404.1527 (treating source has, or has had, an ongoing relationship with claimant).

detailed instructions and to understand and remember short, simple instructions; and "moderate" limitations in her ability to carry out short, simple instructions and make judgments on simple work-related decisions. (R. 195). He based these limitations on Plaintiff's "[d]ifficulty in session understanding instructions for completing [the] form." (*Id.*). Dr. Stoler also indicated that Plaintiff had "marked" limitations in all aspects of social functioning, basing this conclusion on Plaintiff being "fired from multiple jobs due to conflicts with co-workers." (R. 196).

The ALJ gave little weight to Dr. Stoler's conclusions. Substantial evidence supports the ALJ's assessment. First, treatment records from early 2013 indicated that Plaintiff displayed logical and goal directed thoughts, fair insight and judgment, and normal memory, concentration and orientation. (R. 175, 177). Her mental status examinations were frequently within normal limits, with objective findings of logical thought process and content, euthymic mood[14], and no hallucinations. (R. 175, 177, 180, 207, 271, 279, 285, 295, 331, 390). Moreover, the ALJ did not reject Dr. Stoler's opinion outright, and instead, she properly included credibly established mental limitations in the RFC. Based on Plaintiff's multiple mental status reports within normal limits and the ALJ's explanation of the weight afforded to the mental health evidence, I find that substantial evidence supports the ALJ's decision to afford only little weight to the significant mental limitations assessed by Dr. Stoler.

Consequently, I find that the ALJ properly weighed the medical opinion evidence related to Plaintiff's mental limitations, and remand on this basis is not warranted.

---

[14] A euthymic mood refers to a normal, tranquil mental state. In an individual affected with bipolar disorder, euthymia is a stable mental state or mood that is neither manic nor depressive. https://www.merriam-webster.com/medical/euthymia (last visited June 5, 2018).

## VI. CONCLUSION

For the reasons set forth above, I find that the ALJ erroneously weighed the medical opinion evidence related to Plaintiff's physical impairments. Accordingly, Plaintiff's request for review is **GRANTED**, and the matter is remanded for further proceedings consistent with this Memorandum. An appropriate Order follows.

BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE